IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL PAUL RUBIC,

                Plaintiff

    v.

WELLS FARGO, N.A.,and its Division
WELLS FARGO HOME MORTGAGE,
INC.

                Defendant.

Case No. 3:13-cv-01982-AC

FINDINGS AND
RECOMMENDATION

ACOSTA, Magistrate Judge:

*Introduction*

    Wells Fargo, NA and Wells Fargo Home Mortgage, Inc. (collectively "Wells Fargo") move to dismiss claims brought by Plaintiff Michael Paul Rubic ("Rubic") for fraud, breach of contract, unlawful trade practices and promissory estoppel. In the alternative, Wells Fargo moves for a more definite statement.

FINDINGS & RECOMMENDATION - 1                     [RMD]

*Factual Background*

In 2009, Rubic refinanced a property located at 17810 S. Canter Ln. in Oregon City, Oregon (the "subject property") with Wells Fargo. (First Amended Complaint ("Compl.") at ¶ 6.) Several years later, Rubic experienced health problems and sought a loan modification. (Compl. at ¶ 8.) He attended a "home preservation workshop" where Barbara Phillips ("Phillips"), a Wells Fargo representative, told Rubic he qualified for a loan modification. (Compl. at ¶ 10.) The representative told Rubic that his monthly payments would be reduced if he made three consecutive monthly payments of $100.00 under a "temporary payment plan." (Compl. at ¶ 11.)

Rubic made his first payment under the temporary payment plan in March 2011, but thereafter received in the mail a "Special Forbearance Agreement/Temporary Payment Plan" which instructed Rubic to make two monthly payments of $100.00 followed by a third payment of $9,718.00. (Compl. at ¶ 15.) Rubic called Phillips, who assured him the $9,718.00 payment was not due. (Compl. at ¶ 16.) Rubic also received a letter from Wells Fargo assuring him that the loan modification did not require him to pay the $9,718.00 payment. (Compl. at ¶ 17.) Rubic made three $100.00 payments as Phillips instructed, but Rubic soon received a notice of default in the mail from Wells Fargo. (Compl. at ¶ 20.) Wells Fargo informed Rubic that it would foreclose on his home unless he paid $9,518.00 by the end of July 2013. (Compl. at ¶ 20.) It also reported Rubic's loan as 120 days delinquent to credit monitoring agencies. (Compl. at ¶ 23.)

Rubic again contacted Phillips, who told Rubic that the loan modification documents were being processed and that he should continue paying $100.00 per month. (Compl. at ¶ 25.) Despite Phillips's assurances, Wells Fargo refused to accept Rubic's monthly payments and referred his loan to Northwest Trustee Services Inc. to initiate foreclosure proceedings. (Compl. at ¶ 31.) Wells

Fargo also sent Rubic a "trustee notice of sale" in the mail stating that Rubic's home would be sold at auction on December 12, 2011. (Compl. at ¶ 34.)

Rubic borrowed money from friends to make the payment desired by Wells Fargo, but Wells Fargo continued to give Rubic inconsistent information regarding the status of his loan. (Compl. at ¶36.) Rubic contacted a Wells Fargo representative in November 2011, who told Rubic his mortgage was in good standing. (Compl. at ¶ 37.) However, two weeks later, Wells Fargo sent Rubic an invoice due December 1, 2011 for $5,515.28 in addition to his monthly mortgage payment. (Compl. at ¶ 38.) The invoice also increased his monthly payment from $1,944.53 to $2,709.52 and indicated Rubic was past due on his mortgage and owed late fees. (Compl. at ¶ 39.)  In the months that followed, Wells Fargo sent monthly invoices to Rubic showing increased monthly payments and various "late fees, 'Corporate Fees,' 'other fees,' and interest." (Compl. at ¶ 41.) Rubic continued to make payments, which Wells Fargo refused to accept. (Compl. at ¶ 41.)

Wells Fargo offered Rubic another loan modification in April 2012. (Compl. at ¶ 43.) Rubic completed and returned all of the necessary paperwork before it was due. (Compl. at ¶ 43.) Wells Fargo nonetheless told Rubic that his forms were incomplete and rejected his modification application. (Compl. at ¶ 44.) Wells Fargo also sent Rubic a letter indicating his loan was in default. (Compl. at ¶ 45.) Rubic again sought a modification in October 2012, but again Wells Fargo told Rubic his forms were incomplete and refused to accept further payments on his loan. (Compl. at ¶ 46.) Rubic attempted a fourth time to modify his loan in February 2013. (Compl. at ¶ 49.) A Wells Fargo representative told Rubic that he could enter into a temporary payment plan if he made three consecutive monthly payments of $2,015.35. (Compl. at ¶ 49.) Rubic timely submitted all three payments, but was notified several weeks later that his loan was being referred to outside counsel

for foreclosure proceedings. (Compl. at ¶ 50.)

Rubic finally received authorized copies of a loan modification agreement from Wells Fargo in June 2013. (Compl. at ¶ 51.) The loan modification included several "capitalized charges," fees, interest, and "other unexplained costs." (Compl. at ¶ 51.) Despite having paid Wells Fargo more than $70,000.00 from 2009 to 2013, the total amount of the modified loan was $352,443.14, more than the amount of Rubic's refinanced mortgage in 2009. (Compl. at ¶ 51.) Two months after Rubic received his modification agreement, Wells Fargo notified Rubic that it would proceed with foreclosure proceedings on the subject property unless he paid $28,820.92. (Compl. at ¶ 54.)

### Procedural Background

Rubic filed suit on October 4, 2013, in Clackamas County Court. (Dkt. No. 1 Ex. 1.) His complaint alleged claims for: (1) promissory estoppel; (2) unlawful trade practices; (3) common law fraud; and (4) breach of contract. (Dkt. No. 1 Ex. 1.) Defendants removed his complaint to federal court in November 2013, pursuant to this court's diversity jurisdiction. (Dkt. No. 1.) Rubic subsequently filed an amended complaint which alleges the same four causes of action. (Dkt. No. 15.) Defendants now move to dismiss Rubic's complaint for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Dkt. No. 16.) In the alternative, Defendants move for a more definite statement under Rule 12(e).

### Legal Standards

I. Motion to Dismiss for Failure to State a Claim

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(2011). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and

FINDINGS & RECOMMENDATION - 4                                        [RMD]

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

II. Motion for a More Definite Statement

A court may grant a motion for a more definite statement if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Mere vagueness generally is not grounds for dismissal. *Harman v. Valley Nat. Bank of Ariz.,* 339 F.2d 564, 567 (9th Cir. 1964). If a complaint is sufficient under a motion for failure to state a claim under Rule 12(b)(6), a motion for more definite statement is an alternative device to clarify an otherwise vague and indefinite claim. *Bowles v. Glick Bros. Lumber Co.,* 146 F.2d 566, 568 (9th Cir. 1945).

*Discussion*

Wells Fargo moves to dismiss Rubic's UTPA claim for failure to state a claim, but does not challenge Rubic's claims for breach of contract, promissory estoppel, or fraud. In the alternative, Wells Fargo moves for a more definite statement on the basis that Rubic's complaint is so vague and ambiguous that it is unable to respond. The court will discuss each motion individually.

FINDINGS & RECOMMENDATION - 5                                          [RMD]

I.  Motion to Dismiss Rubic's Unlawful Trade Practices Claim

Wells Fargo argues the court should dismiss Rubic's claim for unlawful trade practices because: (1) Rubic cited the wrong statutory section in support of his claim; (2) Rubic's claim is foreclosed by Oregon law because it arises out of a lending transaction initiated prior to March 23, 2010; and (3) Rubic "fails to allege which of the 72 subparts of ORS 646.608(1) was violated" when pleading his claim for unlawful trade practices.  Rubic argues that his claim is sufficiently pleaded but requests leave to amend if the court deems any part of his complaint deficient.

*A.  Proper Statutory Section*

Wells Fargo contends that Rubic fails to state a claim for unlawful trade practices because he cites OR. REV. STAT. § 646.607 to support his claim.  Section 646.607, Wells Fargo contends, does not provide for a private cause of action.  OR. REV. STAT. §§ 646.607 and 646.608 define unlawful trade practices with reference to a lengthy list of proscribed conduct.  Of note, § 646.607(1) classifies as an unlawful practice "[e]mploy[ing] any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation . . . ."  Section 646.608's list of unlawful practices is lengthy, but provides in relevant part that it is an unlawful trade practice when an individual or organization:

> (q) Promises to deliver real estate, goods or services within a certain period of time with intent not to deliver the real estate, goods or services as promised.
> . . .
> (s) Makes false or misleading representations of fact concerning the offering price of, or the persons' cost for real estate, goods or services [or, more generally;]
> . . .
> (u) Engages in any other unfair or deceptive conduct in trade or commerce.

A private party may bring an unlawful trade practices lawsuit for violations of section 646.608, but the UTPA "does not create a private right of action for violations of ORS 646.607.  Instead, those

violations are prosecuted by the state." *Horton v. Nelson*, 252 Or. App. 611, 619-20 (2012), *citing* OR. REV. STAT. § 646.632(1) ("[A] prosecuting attorney who has probable cause to believe that a person is engaging in an unlawful trade practice may bring suit in the name of the State of Oregon to restrain [a] person from engaging in the alleged unlawful trade practice.").

Because Rubic is a private individual and not a state actor, he cannot bring suit for violations of § 646.607. Therefore, the court agrees with Wells Fargo that Rubic's UTPA claim fails to state a claim to the extent it is premised on actions violative of that section. However, Rubic's UTPA claim is cognizable because he also alleges Wells Fargo engaged in "a pattern of unfair practices by selling or offering to sell services" covered by section 646.608. For those reasons, this portion of Wells Fargo's motion should be granted in part and denied in part.

### B. *Loan Services Initiated Before March 2010*

Wells Fargo also argues that Rubic's mortgage is not covered by the UTPA by its very terms. First, Wells Fargo argues that the loan modifications at issue in this case are not covered by the UTPA because the law does not specifically include "loan modifications" in the definition of "real estate, goods or services." According to Wells Fargo, the UTPA definition of "real estate, goods or services" applies only to "loans and extensions of credit," and not loan modifications. OR. REV. STAT. § 646.605. However, Wells Fargo did not brief this issue and mentioned it only in passing at oral argument. Wells Fargo did not carry its burden on this issue. In fact, as the court discusses below, a loan modification constitutes an "extension of credit" which is covered by the UTPA.

Second, Wells Fargo contends that, because Rubic refinanced his loan in 2009, any unlawful trade practices arising out of that loan are not covered by the UTPA because the March 2010 UTPA amendments extending its coverage over "loans and extensions of credit" are not retroactive. In

2009, when Rubic refinanced his mortgage, the UTPA did not protect consumers from unlawful trade practices arising out of loans. *Cullen v. Inv. Strategies, Inc.*, 139 Or. App. 119, 123-125 (1996). However, on March 23, 3010, Oregon Governor Ted Kulongoski signed a bill amending the UTPA to include "loans and extensions of credit" within the definition of "real estate, goods or services." H.B. 3706, 1st Sp. Sess. (Or. 2010). A statutory amendment which "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty . . . must be presumed, out of respect to the legislature, to be intended not to have a retroactive operation." *Wist v. Grand Lodge A.O.U.W*, 22 Or. 271, 282 (1892). Here, the amendment to § 646.605 creates new duties and changes substantive rights by creating civil liability for acts previously not covered by the UTPA. In addition, the legislature gave no indication that the amendment applied retroactively. *See Mikityuk v. Nw. Tr. Servs., Inc.,* 952 F. Supp. 2d 958, 962 (D. Or. 2013) ("Leave to amend, under any section of the UTPA, is futile. Plaintiffs obtained the loan in 2003. The UTPA, however, did not apply to 'extensions of credit' in 2003.").

Whether a UTPA claim may arise out of unlawful trade practices related to post-2010 negotiations to modify a loan executed prior to March 2010 is an issue of first impression in this district. However, some caselaw from this district touches on the issues involved here. In *Roisland v. Flagstar Bank, FSB,* a plaintiff brought suit to recover damages after her home was foreclosed upon pursuant to a deed of trust executed in 2009. 989 F. Supp. 2d 1095, 1100 (D. Or. 2013). There, the plaintiff defaulted on her promissory note and the beneficiary of her note foreclosed on her home in 2012. *Id.* In her suit for unlawful trade practices she alleged the Defendants "misrepresented their authority to foreclose," recorded an assignment of the deed of trust which contained false information, "assessed improper and unauthorized fees or charges," and "caused

confusion related to the parties' relationships, rights, and services." *Id.* at *8 (brackets omitted). However, the plaintiff did not clearly plead her claims with adequate specificity, and the court dismissed her UTPA claim. *Id.* The court observed that "[t]he UTPA is inapplicable to a loan transaction that occurred prior to its amendment in 2010." *Id., citing Mikityuk*, 952 F. Supp. 2d at 961. Because the plaintiff's claim arose "from the loan she received and the deed of trust she granted in 2009" the court determined that amendment was futile and dismissed her claim with prejudice. *Id.*

Roisland*, however, is distinguishable from this case. In *Roisland*, only one transaction was at issue, the 2009 mortgage. Here, Rubic's UTPA claims do not arise directly out of his mortgage, but out of misrepresentations Wells Fargo made during negotiations surrounding a proposed loan modification. Rubic and Wells Fargo were negotiating his loan modification between 2011 and 2013, well after the Oregon legislature amended the UTPA to cover loans and extensions of credit. Thus, *Roisland* is not directly on point.

Because Rubic's claims arise out of loan modification negotiations which occurred after the UTPA was amended, the court must determine whether the loan modification constitutes a "loan or extension of credit" covered by the UTPA. The court concludes that it does, and will recommend denial of Wells Fargo's motion on this point. Although little caselaw exists analyzing whether a loan modification is a loan or extension of credit under the UTPA, at least one court has held in the affirmative. In *Sawyer v. ReconTrust Co., N.A.*, Judge Stewart held that the plaintiff's "request for a loan modification [was] a loan or an extension of credit" as defined in the UTPA. No. CV-11-292-ST, 2011 WL 2619517, at *5 (D. Or. May 27, 2011).

///

FINDINGS & RECOMMENDATION - 9                                    [RMD]

Based on an independent analysis of the UTPA's text, the court agrees with Judge Stewart's conclusion in *Sawyer* that a loan modification constitutes a "loan or extension of credit." The UTPA does not define the phrase "loans or extensions of credit," so the court must look elsewhere for guidance. "[U]nless defined, words in a statute' will be interpreted as taking their ordinary, contemporary, common meaning." *U.S. v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013). To derive a word's plain meaning, the court may consult dictionary definitions which "we trust to capture the common contemporary understandings of the word." *Id.*

"Loan modification" does not readily fit within the ordinary meaning of "loan." The term "loan" is defined as "1. An act of lending; a grant of something for temporary use . . . 2. A thing lent for the borrower's temporary use; [especially] a sum of money lent at interest." BLACK'S LAW DICTIONARY 1019 (9th ed. 2009). A loan modification, as its name suggests, is a change in the original terms of a loan already in existence. Thus, a loan modification is not a "loan" for the purposes of the UTPA.

A loan modification more readily fits within the definition of "extension of credit." "Credit" is defined as "1. Belief; trust . . . 2. One's ability to borrow money; the faith in one's ability to pay back debts; . . . 3. The time that a seller gives the buyer to make the payment that is due. . . . 4. The availability of funds either from a financial institution or under a letter of credit." BLACK'S LAW DICTIONARY, 424 (9th ed. 2009). The words "extend" and "extension" have a number of meanings. First, one could define the word extend to mean to offer or present – i.e., "to extend a helping hand." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 626 (5th ed. 2011). However, this definition would render the phrase "extension of credit" synonymous to the term "loan." Because this definition would create a redundancy within the statutory text, the court concludes this

[RMD]

was not the meaning intended by the drafters of the UTPA. *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 864 (9th Cir. 2014) ("[I]t is a cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant."). Second, "extend" could mean "to cause (something) to be longer, wider, or cover more area." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 626 (5th ed. 2011). Again, however, defining "extension of credit" in this manner would lead to a redundancy within the statute, as the act of lending a borrower additional money on top of a pre-existing loan is, itself, a loan. Third, "extend" or "extension" can be defined as "[t]o prolong the time allowed for payment of" a debt. *Id.* This definition contemplates that a debt exists and that the parties to that debt have agreed to depart from the original repayment schedule in favor of a new repayment regime. In other words, an "extension of credit" as contemplated by this definition, is a loan modification. Unlike the two former definitions discussed above, this latter definition does not render "extension of credit" synonymous with "loan" and create a redundancy in the statutory definition of "real estate, goods or services." Therefore, the court concludes that a loan modification constitutes an "extension of credit" under the UTPA.

Rubic's claims arise out of misrepresentations made while he negotiated the terms of a loan modification with Wells Fargo. However, Wells Fargo and Rubic did not finalize the modification with a binding contract. At this point, a new question arises whether a UTPA claim can arise out of contract negotiations where no contract is ultimately finalized. The court concludes that it may. Neither the UTPA nor the caselaw interpreting it requires all UTPA claims to arise out of a binding agreement. In fact, the text of the UTPA suggests no finalized, binding contract is necessary for a plaintiff to sue one who commits an unlawful trade practice. For example, § 646.608(h) makes it unlawful for a person to disparage "the real estate, goods, services, property or business of a

customer or another by false or misleading representations of fact." That subsection does not prohibit disparaging remarks only between parties to a contract. *Id.* As soon as the violator makes disparaging comments, he or she has committed the unlawful trade practice, and no binding agreement is necessary to complete the offense. Similarly, subsection (k) declares unlawful making "false or misleading representations concerning credit availability or the nature of the transaction or obligation incurred." This too requires no binding agreement. If a violator unlawfully misrepresents to a potential customer that the customer has credit to borrow funds, but no such credit is available, the violator has committed the unlawful trade practice without an accompanying contract. The court concludes that Rubic's claims arise out of Wells Fargo's misrepresentations during negotiations to finalize an "extension of credit." Because these events occurred after the UTPA was amended to cover such transactions, Rubic's claim is not foreclosed as a matter of law.

### C. Failure to Cite Applicable UTPA Subsections

Wells Fargo next argues that Rubic's claim should be dismissed because he "fails to allege which of the 71 subparts of ORS 646.608(1) was violated (if any)." However, Wells Fargo fails to cite any authority indicating that failing to cite the subsection of the statute under which a plaintiffs claim arises renders that claim inadequately pled. Rule 8 requires only that a Plaintiff's claims for relief provide "a short and plain statement of the grounds for the court's jurisdiction, . . . a short and plain statement of the claim showing that the pleader is entitled to relief[,] and . . . a demand for the relief sought." FED. R. CIV. P. 8. A plaintiff must also meet the "plausibility" requirements of *Iqbal* and *Twombly* by pleading facts which "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 663. No pleading standard requires a plaintiff to specifically identify the statutory subsection under which his claims arise, and

the court will not require that of Rubic. *Hall v. Regence Bluecorss Blueshield of Ore./HMO Oregon*, No. Civ. 00-695-AS, 2000 WL 33946080, at *1 (D. Or. Aug. 1, 2000) ("Plaintiff's failure to cite the specific statute entitling him to relief is not fatal.").

Further, on November 10, 2014, the Supreme Court published a per curiam opinion in *Johnson v. City of Shelby, Mississippi*, No. 13-1318, 574 U.S. ___, *available at* 2014 WL 5798626 (Nov. 10, 2014) (per curiam). There, the Court held that failing to cite 42 U.S.C. § 1983 in a complaint alleging claims arising out of that section is not grounds for dismissal under a motion brought pursuant to Rule 12(b)(6). *Id.* at 3. The court distinguished between the heightened fact-pleading standards established in *Twombly* and *Iqbal* from a heightened legal-pleading standard which the *Johnson* defendant urged the court to adopt. *Id.* at 2. Also on November 10, 2014, a court in the Eastern District of California cited *Johnson* while rejecting a Defendant's motion to dismiss for failure to "identify the acts that violated each of the subsections of the" California Consumer's Legal Remedies Act ("CLRA"), a statute similar to Oregon's UTPA which bars twenty-four commercial practices. *Sigala v. Carmax Auto Superstores, LLC*, No. 1:14-cv-01451-SAB, 2014 WL 5823099, at *7 (E.D.Cal. Nov. 10, 2014).

There is a significant distinction between § 1983, which is a simple statute creating a cause of action for constitutional violations, and the UTPA, which prohibits more than seventy specifically defined commercial practices. Even the CLRA, discussed by the *Sigala* court is short and simple compared to the extensive and complex UTPA. However, the Supreme Court did not distinguish between complex statutes and simple statutes when rendering its opinion in *Johnson*. Instead, it distinguished only between factual allegations, which must be sufficiently specific, and legal allegations, which the court held were of less importance to a complaint. Therefore, the court should

decline to dismiss Plaintiff's complaint for failure to articulate the specific subsections of the UTPA which give rise to his claim.

II.  Motion for a More Definite Statement

Wells Fargo next contends that, in the event the court denies its motion to dismiss, it should require Rubic to provide a more definite statement of his UTPA claim.  The court agrees.  Although the *Johnson* Court made clear that failing to cite the law under which a plaintiff's claim arises is not grounds for dismissal under Rule 12(b)(6), it nonetheless held that "[f]or clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983." *Johnson*, 574 U.S. —, 2014 WL 5798626, at *1.

Here, Rubic did not cite the subsection or subsections of the UTPA which give rise to his claims.  As a result, Rubic's complaint is too vague and ambiguous to allow Wells Fargo to defend against Rubic's claims.  Thus, the court should grant Wells Fargo's Motion for a More Definite Statement and require Rubic to amend his complaint to identify the specific subsections of the UTPA which give rise to his claims.

*Conclusion*

For the aforementioned reasons, Defendant Wells Fargo's Motion to Dismiss (Dkt. No. 16) should be DENIED.  However, the court should GRANT Wells Fargo's Motion for More Definite Statement (Dkt. No. 16).

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due December 8, 2014.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a

FINDINGS & RECOMMENDATION - 14                                              [RMD]

response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

This 24th day of November, 2014.

_____
JOHN V. ACOSTA
United States Magistrate Judge