IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MICHAEL PAUL RUBIC,**

    Plaintiff,

v.

**WELLS FARGO, NATIONAL ASSOCIATION (INC.),** individually and with **WELLS FARGO HOME MORTGAGE, INC.**,

    Defendants.

No. 3:13-cv-01982-AC

OPINION AND ORDER

**MOSMAN, J.**,

On November 24, 2014, Magistrate Judge Acosta issued his Findings and Recommendation ("F&R") [25] in the above-captioned case recommending that I deny Defendants Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage's (collectively, "Wells Fargo") Motion to Dismiss and grant Wells Fargo's Motion for a More Definite Statement [16]. I agree that because Plaintiff Michael Paul Rubic's claim under Oregon's Unlawful Trade Practices Act ("UTPA") arises out of loan modification negotiations that occurred after March 23, 2010, it is not foreclosed as a matter of law. Consequently, I deny Wells Fargo's Motion to Dismiss and grant Wells Fargo's Motion for a More Definite Statement.

## BACKGROUND

In 2009, Mr. Rubic refinanced a property located in Oregon City, Oregon, with Wells Fargo. First Am. Compl. [15] at ¶ 6. In 2011, Mr. Rubic sought a loan modification. *Id.* at ¶ 8. Mr. Rubic's claims of promissory estoppel, unlawful trade practices, common law fraud, and breach of contract concern his subsequent negotiations with Wells Fargo. *Id.* at ¶¶ 65–81.

1 – OPINION AND ORDER

Wells Fargo moved to dismiss Mr. Rubic's unlawful trade practices claim for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) [16].[1] In the alternative, Wells Fargo moved for a more definite statement under Rule 12(e). After briefing and oral argument on the issue, Magistrate Judge Acosta issued his F&R, recommending that I deny Wells Fargo's Motion to Dismiss and grant Wells Fargo's Motion for a More Definite Statement [25]. Wells Fargo subsequently filed objections [28].

## LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be

---

[1] Wells Fargo did not challenge Mr. Rubic's claims for breach of contract, promissory estoppel, and fraud.

enough to raise a right to relief above the speculative level." *Id.* While the court must assume that all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a plaintiff must set forth a plausible claim for relief – a possible claim for relief will not do. *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. US. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

## DISCUSSION

Wells Fargo raises two objections to the F&R. First, Wells Fargo argues that the UTPA does not apply to Mr. Rubic's claim because the underlying loan was originated before the UTPA was amended to bring loans and extensions of credit within its purview. Second, Wells Fargo argues that the UTPA does not apply to Mr. Rubic's claim because a loan modification does not qualify as an extension of credit. Neither argument prevails.

**I.**     <u>**Applicability of the UTPA to Mr. Rubic's Claim**</u>

The UTPA did not originally protect consumers from unlawful trade practices arising out of "loans and extensions of credit." *See Lamm v. Amfac Mortgage Corp.*, 605 P.2d 730, 731 (Or. Ct. App. 1980). On March 23, 2010, Oregon amended the UTPA to include "loans and extensions of credit" within the definition of "real estate, goods or services." Or. Laws Spec. Sess. Ch. 94 (2010) (amending OR. REV. STAT. § 646.605) ("2010 Amendment"). However, because the 2010 Amendment created civil liability for acts not previously covered by the UTPA, and because the legislature gave no indication otherwise, the 2010 Amendment does not apply retroactively. *See Wist v. Grand Lodge A.O.U.W.,* 29 P. 610, 612 (Or. 1892) (explaining

that a statutory amendment that "creates a new obligation, or imposes a new duty . . . must be presumed, out of respect to the legislature, to be intended not to have a retroactive operation").

Wells Fargo argues that because Mr. Rubic's underlying loan was originated in 2009, the 2010 Amendment's expansion of the UTPA to cover "loans and extensions of credit" does not apply to Mr. Rubic's claim. Wells Fargo cites three cases to support its position that courts look to the date the loan at issue was originated—rather than the date the conduct relating to the loan occurred—to determine whether the 2010 Amendment applies. *See Roisland v. Flagstar Bank, FSB*, 989 F. Supp. 2d 1095, 1108 (D. Or. 2013) (Mosman, J.) (holding that the Plaintiff could not support a claim under the UTPA because her claim "arises from the loan she received and deed of trust she granted in 2009"); *Mikityuk v. Nw. Tr. Servs., Inc.*, 952 F. Supp. 2d 958, 962 (D. Or. 2013) (dismissing the Plaintiffs' UTPA claims without prejudice because the claims arose from a loan the Plaintiff's obtained in 2003); *Hernandez v. BAC Home Loan Servicing, LP*, No. 3:12-CV-00106-MO , 2012 WL 1941745, *3 (D. Or. May 23, 2012) (Mosman, J.) (dismissing the Plaintiff's UTPA claim because it "stems from a credit arrangement occurring in 2006").

However, Wells Fargo misconstrues the test it draws from these cases when it limits its analysis to the date the "*loan* at issue" was originated. The 2010 Amendment expanded the UTPA's reach to cover both "loans and extensions of credit." Therefore, accepting the reasoning of the cited cases, the proper analysis for determining whether the 2010 Amendment applies looks to the date the loan *or extension of credit* at issue was originated. As the F&R correctly noted, Mr. Rubic's claim arises out of an extension of credit that *originated after* the 2010 Amendment.[2]  Since the UTPA clearly applies to loans and extensions of credit that originate after the 2010 Amendment, Mr. Rubic's UTPA claim is not foreclosed as a matter of law.

---

[2] See Section II for explanation as to why a loan modification qualifies as an "extension of credit" under the UTPA.

## II.     Loan Modifications and Extensions of Credit

Wells Fargo next argues that the UTPA does not apply to Mr. Rubic's claim because a loan modification does not qualify as an "extension of credit." Specifically, Wells Fargo argues that the F&R applied an inappropriate statutory construction methodology resulting in the conclusion that a loan modification qualified as an "extension of credit" covered by the 2010 Amendment. As Wells Fargo correctly notes, when a federal court interprets a state statute, its role is to "interpret the law as would the [State] Supreme Court." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004). Accordingly, when interpreting the UTPA, a court should "ascertain the legislature's intent by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 261 P.3d 1234, 1238 (2011) (citing *State v. Gaines,* 206 P.3d 1042, 1050–51 (2009)).

The F&R did not follow this methodology. However, applying the appropriate statutory interpretation methodology, I come to the same conclusion: a loan modification qualifies as an "extension of credit" for purposes of the UTPA. As such, I agree with the conclusion of the F&R and several prior courts. *See Sawyer v. ReconTrust Co.*, No. CV-11-292-ST, 2011 WL 2619517, at *5 (D. Or. May 27, 2011) ("[a] request for a loan modification is a loan or an extension of credit") *report and recommendation adopted,* No. 3:11-CV-292-ST, 2011 WL 2610223 (D. Or. June 30, 2011); *see also Watts v. JP Morgan Chase Bank, N.A.*, No. 5:11-CV-02780-LHK, 2012 WL 3638537, at *3 (N.D. Cal. Aug. 22, 2012) ("A modification of an existing loan is an extension of credit for [federal Equal Credit Opportunity Act] purposes"); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011) (holding that the recipient of an offer to modify a loan "received an extension of credit" under the federal Equal Credit Opportunity Act).

### A.  Examining the Text of the Statute in Context

I begin with an analysis of the statutory text. *Gaines*, 206 P.3d at 1052. Although the UTPA does not define the term "extension of credit," it is appropriate to look to the dictionary definitions of the term's component parts because they are commonly used. *Id.* (citing *Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 859 P.2d 1143, 1146 (Or. 1993)).

As the F&R notes, "extension" has multiple definitions. The most relevant within the statutory context are either: (1) to offer or present—i.e., "to extend a helping hand"; or (2) to prolong the time allowed for payment of a debt. *The American Heritage Dictionary of the English Language*, 626 (5th ed. 2011).[3] As the F&R further notes, "credit" also has multiple definitions, including, most relevantly: (1) the time that a seller gives the buyer to make the payment that is due; and (2) the availability of funds either from a financial institution or under a letter of credit. *Black's Law Dictionary*, 424 (9th ed. 2009). When these pairs of definitions are combined, they generate two distinct composite definitions for the term "extension of credit": (1) to prolong the time allowed for payment of a debt; and (2) to present the availability of funds from a financial institution or under a line of credit.

The F&R rejected the second composite definition for purposes of the UTPA on the grounds that it would lead to a redundancy within the statutory phrase "loans or extensions of credit." However, such analysis fails to properly distinguish an extension of credit, defined as the presentation of the *availability* of funds, from a loan, defined as a "thing lent for the borrower's temporary use; [especially] a sum of money lent at interest." *Black's Law Dictionary* 1019 (9th

---

[3] In challenging the F&R's plain meaning analysis, Wells Fargo implies that the F&R erred by relying on *The American Heritage Dictionary of the English Language* (5th ed. 2011) instead of *Webster's Third New International Dictionary* (unabridged ed. 2002). While it is true that the Oregon Supreme Court most frequently cites to *Webster's Third New International*, the court, sitting en banc, has specifically held that "[u]nless the legislature is shown to have chosen its words in reliance on a particular dictionary definition of them, no particular dictionary is 'authoritative' or otherwise controlling." *Comcast Corp. v. Dep't of Revenue*, 337 P.3d 768, 776 n. 7, 779 n. 13 (Or. 2014). Since Wells Fargo makes no allegations that the Oregon Legislature relied on *Webster's Third New International*, it was reasonable for the F&R to rely on *The American Heritage Dictionary*.

ed. 2009). Whereas the former involves the funds' simple *availability* (e.g. a line of credit or a credit card), the latter requires the actual loan to have taken place. Therefore, there is no redundancy between an extension of credit, defined as an offer of the *availability* of funds, and a loan.

As such, Wells Fargo is correct that the F&R erred when it concluded that the *only* way to avoid a statutory redundancy between "loans and extensions of credit" was to construe extension of credit to mean the prolonging of time allowed for payment of a debt.  However, Wells Fargo's logic goes one step too far when it infers that an extension of credit *cannot* mean the prolonging of time allowed for payment of a debt. As shown above, the prolonging of time allowed for payment of a debt is one of two legitimate plain meaning definitions of an extension of credit.

Since an extension of credit can be defined in multiple ways, I next look to the statutory context of the UTPA to determine whether context helps to derive the legislature's intent. *State v. Ziska*, 334 P.3d 964, 967 (Or. 2014) (citing *State v. Fries,* 185 P.3d 453, 456 (2008)). The Oregon Supreme Court has explained that relevant sources of statutory context include: other provisions of the same statute, session laws, related statutes, preexisting common law, and the statutory framework within which the law was enacted. *Stevens v. Czerniak*, 84 P.3d 140, 145 (2004).

Wells Fargo relies on three comparisons to argue that the Oregon Legislature cannot have intended its use of "extension of credit" within the UTPA to entail a loan modification. First, Wells Fargo points to Oregon's Mortgage Lender Law ("MLL"), which includes "extension of credit" within the statutory definitions of "mortgage banking loan" and "mortgage loan." OR. REV. STAT. § 86A.100(4), (6) (2014). Wells Fargo argues that since the MLL does not concern

7 – OPINION AND ORDER

loan modifications, the Oregon Legislature's use of "extensions of credit" in the UTPA does not encompass loan modifications either. However, neither section Wells Fargo cites to support its assertion that the MLL does not concern loan modifications sufficiently supports such an assertion. The first, OR. REV. STAT. § 86A.103 (2014), makes it unlawful for unlicensed individuals to "engage in residential mortgage transactions," which the section subsequently defines to be any act that, among other criteria, originates from Oregon, is directed to and received in Oregon, *or* concerns real estate located in Oregon. The second, OR. REV. STAT. § 86A.178 (2014), mandates that "a mortgage loan originator"—a statutorily defined position, regulated outside of the MLL—may not originate loans for more than one employer at the same time. *See* OR. REV. STAT. §§ 86A.095, 86A.200–242 (2014). Neither section supports the inference that the MLL does not concern loan modification. Therefore, Wells Fargo fails to support its argument that the MLL's use of "extension of credit" demonstrates that the UTPA's use of "extension of credit" does not cover loan modifications.

Wells Fargo next asserts that the Oregon Legislature adopted the term "loans and extensions of credit" from a line of cases that originated with *Lamm v. Amfac Mort. Corp.*, 605 P.2d 730, 731 (1980). Wells Fargo argues that since none of these cases concerned loan modifications at the time of the 2010 Amendment, the Oregon Legislature cannot have intended its inclusion of "loans and extensions of credit" within the UTPA to entail loan modifications. However, Wells Fargo fails to provide any support for its assertion that the Oregon Legislature relied on this line of cases when it amended the UTPA, let alone its subsequent inference that the Oregon Legislature actually recognized that none of the cases concerned loan modifications. In fact, *Lamm* itself recounts that in 1977—three years before the case was even decided—the Oregon Legislature considered amending the UTPA to include "loans and extensions of credit."

*Id.* It therefore seems unlikely that the Oregon Legislature relied on *Lamm*. Consequently, Wells Fargo fails to provide persuasive support for its argument that the Oregon Legislature's reliance on the line of cases originating with *Lamm* demonstrates that it did not intend "extension of credit" to cover loan modifications.

Finally, Wells Fargo argues that since the Oregon Legislature explicitly referenced loan modification in the context of veterans loans, OR. REV. STAT. § 407.327(2) (2014), the fact that the Oregon Legislature did not similarly do so in the UTPA demonstrates that it did not intend the UTPA to apply to loan modifications. However, the Oregon courts have held that "the fact that the legislature employed certain phrasing in one statute, but not another, is not conclusive": while it provides a "permissible inference, . . . it gives way to other, more direct, and contrary evidence of legislative intent." *MEC Oregon Racing, Inc. v. Oregon Racing Comm'n*, 225 P.3d 61, 67 (Or. Ct. App. 2009) (citing *State v. Robison,* 120 P.3d 1285, 1287 (Or. Ct. App. 2005)).

Such direct and contrary evidence of legislative intent is provided by the Oregon Consumer Identity Theft Protection Act ("CITPA"). Under the CITPA, the Oregon Legislature explicitly defined "extension of credit" to mean "a right to defer paying debt or a right to incur debt and defer paying the debt, that is offered or granted primarily for personal, family or household purposes." OR. REV. STAT. § 646A.602 (2014). Since the Oregon Supreme Court has held that courts should "ordinarily assume that the legislature uses terms in related statutes consistently," *State v. Cloutier*, 261 P.3d 1234, 1251 (2011), this definition provides direct evidence of to the Oregon Legislature's intent when it used "extensions of credit" in the UTPA. Such direct evidence is more persuasive than the inference Wells Fargo asks me to draw from the fact that the Oregon Legislature did not include the same, precise loan modification language in the UTPA that it included in OR. REV. STAT. § 407.327(2).

Looking to the CITPA's definition of "extension of credit," the Oregon Legislature's intent to adopt the term's binary plain meaning—both as a right to "defer payment" and to "incur debt"—is sufficiently clear. Additionally, the Oregon Legislature has directed that "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." OR. REV. STAT. § 174.010 (2014). Accordingly, it is more likely than not that the Oregon Legislature's intended its use of "extension of credit" within the UTPA to encompass the term's binary plain meaning—as both the prolonging of time allowed for payment of a debt and the presentation of the availability of funds from a financial institution or under a line of credit.

### B. Considering Legislative History and General Maxims of Statutory Construction

Since neither party proffers any legislative history, and the Oregon Legislature's intent is sufficiently clear from the statutory text and context, there is no need to consider legislative history or general maxims of statutory construction. *See Gaines*, 206 P.3d at 1050–1051.

Even so, Wells Fargo argues that I should rely on the general maxim of statutory construction that courts should avoid absurd results. Wells Fargo argues that the Oregon Legislature cannot have intended to hold loan servicers, who are required under federal law to contact delinquent borrowers and inform them of loss mitigation options including loan modification, liable for violations of the UTPA. However, the Oregon Supreme Court defines an absurd result as one that is "inconsistent with the apparent policy of the legislation as a whole." *State v. Vasquez-Rubio*, 917 P.2d 494, 497 (1996). Wells Fargo offers no evidence that any aspect of the apparent policy of the UTPA is inconsistent with holding loan servicers liable for violations of the UTPA. Furthermore, nothing within the UTPA itself would appear to limit who the statute applies to. *See, e.g.*, OR. REV. STAT. § 646.608 (2014) ("*a person* engages in an unlawful practice if…") (emphasis added). Wells Fargo fears that if loan servicers comply with

their federal duties, they will subject themselves to liability under the UTPA. This is not true. Loan servicers will only be liable under the UTPA if they violate the statute. Consequently, there is no support for a conclusion that holding loan servicers liable for violations of the UTPA is an absurd result.

## CONCLUSION

For the foregoing reasons, I ADOPT in part and MODIFY in part Judge Acosta's F&R [25]. While a loan modification and an extension of credit are not interchangeable terms, a loan modification does qualify as an "extension of credit" for purposes of the UTPA. Therefore, because the F&R correctly concluded that Mr. Rubic's UTPA claim arises out of loan modification negotiations that occurred after March 23, 2010, Mr. Rubic's UTPA claim is not foreclosed as a matter of law. Consequently, I DENY Wells Fargo's Motion to Dismiss and GRANT Wells Fargo's Motion for a More Definite Statement.

IT IS SO ORDERED.

DATED this   13th   day of February, 2015.

/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
United States District Judge